**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**JOSEPH ANTHONY REYNA (JOECAT®),**

Plaintiff, Pro Se,

v.

**UNIVERSAL MUSIC GROUP N.V.,**

Defendant.

**Civil Action No. 1:25-cv-06779 (LLS)**

---

**PLAINTIFF'S STAND-ALONE NOTICE REGARDING**

**PROVISIONAL CHART TRUTH, RETROACTIVE CERTIFICATION REVISION,**

**AND SYSTEMIC INCENTIVES THAT DECOUPLE METRICS FROM HUMAN**

**INTENT**

*(Non-Merits Filing; Context, Preservation, and Market-Structure Clarification Only)*

---

1

**PRELIMINARY DISCLAIMER AND CLARIFICATION REGARDING PURPOSE**

Plaintiff submits this Stand-Alone Notice with awareness that matters touching on widely relied-upon industry metrics may prompt concern regarding scope, intent, or procedural posture.

Accordingly, Plaintiff expressly clarifies the following:

1. **This Notice is not a motion and seeks no action by the Court.**
   Plaintiff does not request findings, relief, discovery, sanctions, or adjudication of any issue raised herein.

2. **This Notice does not allege illegality, bad faith, or misconduct by any party.**
   The observations set forth concern structural characteristics of metric governance and preservation, not intent, motive, or culpability.

3. **This Notice is not offered to pressure the Court, influence scheduling, or expand the merits of this case.**
   Plaintiff submits it solely to preserve contextual information relevant to interpretability and reliance should such issues later arise.

4. **This Notice is forward-looking and preservational, not accusatory.**
   Its purpose is to document foreseeable evidentiary considerations in an evolving measurement environment, not to assign blame or advocate policy outcomes.

2

5. **The Court is not asked to accept or reject any characterization herein.**

Plaintiff submits this Notice only to ensure that the existence of rule volatility, retroactive adjustment, and interpretive instability is reflected in the record as context, without requiring judicial engagement.

Plaintiff recognizes the Court's interest in efficient case management and submits this Notice in a manner intended to minimize burden, avoid procedural complication, and maintain strict separation from the merits.

---

## I. PURPOSE AND LIMITATION

Plaintiff submits this Stand-Alone Notice for the limited purpose of preserving record context regarding the interpretability and reliability of industry metrics that are routinely treated as authoritative in valuation, comparison, contractual leverage, and public-facing legitimacy.

This filing does **not** allege illegality, assign intent, or seek adjudication on the merits. It does not request relief. Its sole purpose is to document foreseeable, system-level issues relevant to reliance, comparability, preservation, and future review.

---

## II. BACKGROUND: RECURRING RULE MODIFICATION WITHOUT BASELINE CONTINUITY

Plaintiff notes a recurring pattern in which chart-counting and certification methodologies are modified with increasing frequency, including:

1. Reweighting activity types such that fewer total interactions may yield equivalent chart units;

2. Increased valuation of passive or ambient consumption relative to affirmative user choice;

3. Retrospective adjustment of prior certifications or comparative benchmarks.

These modifications are implemented without a stable, cross-era baseline or publicly disclosed version control, rendering longitudinal comparison inherently unreliable.

---

## III. ANALOGY: VARIABLE VOTING RULES AND LOSS OF MEANING

To illustrate the structural concern, Plaintiff offers the following analogy.

Imagine a voting system in which:

- The rules for counting votes change each election cycle;

4

- A ballot cast intentionally by a voter counts less than a ballot registered because a television was left on an automated loop;

- Some votes are counted multiple times due to ambient exposure, while others require deliberate action;

- Past election totals may be revised years later, after outcomes have already been celebrated and institutionalized.

Under such a system, the issue would not be *who won*, but whether the term "vote" still carries a consistent and intelligible meaning.

The concern would not be fraud, but **interpretability**. A system cannot claim legitimacy if the unit it measures no longer represents a consistent act of human intent.

---

## IV. APPLICATION TO CHART AND STREAM-BASED METRICS

In the present market environment:

- "Streams" are increasingly treated as interchangeable regardless of whether they result from active listener choice or passive exposure;

- Chart rankings are publicly framed as indicators of popularity, while underlying mechanics reward placement, repetition, and ambient capture rather than preference;

- Certifications and superlative claims are promoted as historical facts, despite the absence of stable measurement rules across time.

As a result, claims such as "highest streamed" or "record-breaking" lack verifiable provenance. Absent disclosure of source distribution, concentration, and behavioral context, such figures function as assertions rather than measurements.

---

## IV.A. RETROACTIVE CERTIFICATION ADJUSTMENTS AND ASYMMETRIC ENFORCEMENT OUTCOMES

Plaintiff further notes instances in which previously awarded multi-platinum certifications were retroactively downgraded by several certification levels.

Such revisions demonstrate that aggregate stream counts and unit calculations are not fixed historical facts, but remain subject to later reclassification or discounting.

The ability to retroactively remove or disqualify streams necessarily implies that such streams were initially treated as valid for purposes of charting, certification, and public representation.

Plaintiff further notes a material asymmetry in enforcement outcomes associated with irregular-activity determinations. Where independent artists are alleged to have engaged in

irregular activity, consequences may include platform-level sanctions such as catalog removal, account termination, or distribution suspension. By contrast, retroactive certification adjustments applied to major-label releases do not typically result in equivalent access restrictions or catalog penalties.

The result is a system in which streams may be publicly counted, leveraged, and monetized before later reclassification, without contemporaneous disclosure of how such adjustments would have altered chart outcomes or historical rankings at the time of release.

---

## V. LEGACY COMPARABILITY AND HISTORICAL DISTORTION

Plaintiff further notes that legacy works, created and distributed under materially different measurement regimes, are routinely compared against modern outputs as if the underlying units were equivalent.

This practice does not diminish the ongoing economic relevance of legacy catalogs, which remain widely exploited across retail, broadcast, and commercial environments. Instead, it retroactively devalues historical achievement by applying contemporary, inflationary metrics to eras that operated under scarcity-based distribution and affirmative consumer action.

---

## VI. METHODOLOGY AS EVIDENCE, NOT OUTCOME

The issue presented is not whether current metrics are "right" or "wrong," but whether they are **fit for purpose** when used to:

- Establish market dominance;

- Support valuation narratives;

- Influence contractual leverage;

- Shape cultural memory and historical record.

Courts, regulators, and auditors evaluate the reliability of processes, not merely outcomes. Where methodology histories, weighting schemas, and rule-change versioning are unavailable, reliance on aggregate figures becomes speculative.

---

## VII. PRESERVATION IMPLICATIONS AND FORESEEABLE EVIDENCE DEGRADATION

Plaintiff further notes that repeated modifications to measurement rules during periods of active litigation and regulatory scrutiny create foreseeable risks to evidentiary integrity.

Where metrics are used to establish valuation, reliance, or comparative performance, alterations to weighting, classification, or interpretive frameworks impair the ability of any future factfinder to assess historical conditions as they existed at the relevant time.

Even where underlying raw data may be retained, changes to governing methodologies result in:

- Loss of comparability across periods;

- Inability to reconstruct prior incentive environments;

- Ambiguity as to what recorded figures represented when generated.

Absent contemporaneous preservation of rule sets, weighting schemas, and interpretive documentation, such changes functionally degrade evidence without requiring deletion. This degradation compounds over time and renders future review increasingly speculative.

---

## VII.A. ANTICIPATED CHARACTERIZATION OF RULE CHANGES

Plaintiff anticipates that recurring methodology changes may be characterized as routine, evolutionary, or benign. Plaintiff does not dispute that measurement systems may evolve over time.

However, where metrics are publicly relied upon to establish valuation, dominance, or historical record, routine change is not neutral when implemented without:

- Archived methodology histories;

- Version-controlled weighting schemas;

- Contemporaneous documentation of interpretive rules.

Absent these safeguards, evolution produces incomparability, not improvement.

---

## VII.B. RAW DATA RETENTION DOES NOT PRESERVE MEANING

Plaintiff further anticipates the assertion that retention of underlying raw data mitigates evidentiary concern.

Raw data, without preserved interpretive frameworks, cannot reconstruct the conditions under which that data acquired meaning. Where incentive structures, classifications, or weighting logic have changed, the probative value of retained data is materially diminished.

Evidence degradation may occur without deletion when the rules governing interpretation are altered.

---

## VIII. INCENTIVE EFFECTS AND NON-HUMAN AMPLIFICATION

Plaintiff further notes that measurement frameworks which devalue affirmative human choice and elevate passive or ambient exposure predictably incentivize automation.

Where outcomes depend primarily on repetition, placement, and uninterrupted throughput, rather than deliberate engagement, such systems do not distinguish between human and non-human behavior at scale.

This design is neutral as to source. It rewards volume regardless of whether that volume arises from individual listeners, automated playback, or algorithmically induced repetition.

Accordingly, the issue presented is not the existence of improper conduct, but the foreseeable consequence that systems which do not privilege intent inherently reward non-human amplification and are resistant to meaningful verification.

This incentive structure further complicates preservation, as future reviewers cannot reliably determine whether recorded activity reflects individual preference, automated processes, or a combination thereof.

---

## VIII.A. RECURSIVE RELIANCE AND STRUCTURAL CONTRADICTION

Plaintiff further notes a recursive structural condition inherent in the current metric framework.

Industry participants publicly rely on chart and certification metrics to establish authority, valuation, and historical significance, while simultaneously implementing rule changes that eliminate stable baselines and prevent independent verification of what those metrics represent.

The system thus depends on metrics whose meaning cannot be reconstructed, and invokes that opacity as a reason such metrics cannot be meaningfully challenged.

This recursion is self-reinforcing. The more frequently methodologies change without preservation, the more authoritative the resulting figures are treated, and the less capable any future reviewer becomes of assessing their validity.

The issue presented is not hypocrisy in conduct, but contradiction in structure.

---

## IX. REAL-TIME CORRECTION AND PROSPECTIVE ASYMMETRY

Plaintiff further notes that the current metric framework exhibits a dual dynamic: retroactive adjustment of past measurements alongside prospective rule changes that increase tolerance for passive exposure, repetition, and automation.

This combination allows historical figures to be revised after commercial and cultural value has already been extracted, while simultaneously lowering the threshold for future metric accumulation.

The result is not neutrality, but asymmetry. Correction occurs without unwinding downstream reliance, while future outcomes are shaped by rules that further privilege scale over intent.

The foreseeable impact of this dynamic is borne disproportionately by legacy artists, whose historical achievements become diluted through comparison, and by emerging artists, who encounter elevated barriers to entry in a system optimized for placement and throughput rather than affirmative audience choice.

Plaintiff submits this Notice to preserve the record that real-time correction coupled with prospective inflation materially affects interpretability, reliance, and historical meaning.

---

## X. SYSTEMIC KNOWLEDGE INSTABILITY AND FORESEEABLE RELIANCE FAILURE

Plaintiff further notes that repeated, unversioned rule changes within the streaming and certification ecosystem create a condition of systemic knowledge instability.

Where measurement rules, enforcement standards, and valuation mechanisms change frequently and without continuity, educators, credentialed professionals, and market participants cannot reliably transmit durable understanding of industry operation.

This instability disproportionately disadvantages independent and emerging participants, who rely on published standards and educational pathways, while favoring incumbent actors capable of absorbing rule volatility.

The foreseeable consequence is reliance failure: educational credentials lose predictive value, workforce preparation decouples from market reality, and purported opportunities fail to materialize despite sustained investment by students and market entrants.

Plaintiff submits this Notice to preserve the record that rule volatility functions not merely as technical adjustment, but as a barrier that reallocates risk away from institutional incumbents and onto individuals lacking leverage.

## XI. INTERMEDIATION PROLIFERATION AND PAYMENT OPACITY

Plaintiff further notes a persistent expansion of intermediary layers within the music royalty and licensing ecosystem.

Rather than direct settlement between platforms and rights holders, compensation is routed through multiple third-party entities responsible for aggregation, matching, processing, and redistribution.

This architecture converts otherwise discrete transactions into estimated allocations subject to delay, reclassification, and retroactive adjustment. Each additional intermediary layer introduces opacity and discretion, while reducing the ability of individual rights holders to verify attribution, timing, or accuracy.

By contrast, comparable digital industries routinely effectuate direct payment to individual accounts using standardized financial infrastructure. The continued reliance on complex intermediary chains within the music industry is therefore not a technical necessity, but a governance choice.

This intermediation model further complicates preservation, as funds and usage data are transformed multiple times before reaching the purported beneficiary, rendering reconstruction of original conditions increasingly impracticable.

---

## XII. CONCLUSION

Measurement systems derive legitimacy from consistency, transparency, and interpretability. When units of measurement shift without continuity, comparison becomes performative rather than informative.

14

As with a voting system that counts unattended televisions as ballots, the result may still produce numbers, but those numbers no longer reflect collective choice.

Plaintiff submits this Notice to preserve the record that metric volatility, retroactive adjustment, asymmetric enforcement outcomes, passive exposure weighting, automation incentives, and payment opacity materially affect interpretability, reliance, and historical meaning.

---

Respectfully submitted,

**December 17, 2025**

/s/ **Joseph Anthony Reyna**

**JOSEPH ANTHONY REYNA (JOECAT®)**

Plaintiff, Pro Se

Austin, Texas

whitehat@joecattt.com

*(written contact only)*